## Cadden Unemployment Compensation Case.

Argued March 6, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Thomas M. Hart,* with him *James G. Colleran,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Anne X. Alpern,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY ERVIN, J., April 13, 1961:

This is an unemployment compensation case in which the claimant, Stanley J. Cadden, was denied benefits by the Bureau, the referee and the board, all having concluded that the claimant was discharged due to willful misconduct connected with his work and, therefore, was disqualified from receiving benefits under the provisions of §402(e) of the Unemployment Compensation Law, 43 PS §802(e).

On March 10, 1959, while returning from his home in Scranton to his job with the Turnpike Commission at Plymouth Meeting, claimant was arrested by a State police officer and charged with operating a State car beyond the speed limit. He admitted doing 73 or 74 miles per hour (the limit being 65 miles per hour). He

paid the fine and suffered a suspension of his driver's license. At the referee's hearing he admitted that he had been stopped the week before for speeding and further stated that he rarely drove within the limits.

Claimant testified that he did not know that he was not permitted to take the car to his home in Scranton. The employer representative testified that anybody on 24-hour call (as this claimant was) could take the car home if he lived within the district. Scranton was not within the district where claimant was employed.

Counsel for the claimant argues that benefits should not be denied where "the acts causing discharge are not during working hours; are not on employer's premises; occur at a time when he was not engaged in work; do not concern his suitability as an employee, and were not work connected." The record shows that the claimant was on 24-hour call and it was evidently because of this that he was permitted to take the car home if he lived within the district. If the employee uses the property of his employer in such manner as to bring criticism upon his employer, we are of the opinion that his discharge was justified. Certainly an employee of the Turnpike Commission should set an example to other members of the public in driving his employer's car on the turnpike. This claimant admitted that on this occasion he was driving 73 or 74 miles an hour and that he rarely drove within the limits. He also admitted that he had been stopped for speeding the week before. The Turnpike Commission might well be severely criticized for permitting such an employee to continue to operate the Commission's vehicles upon the turnpike. This conduct alone, in our opinion, was sufficient to justify the discharge. It constituted willful misconduct connected with his work. It was a willful disregard of the employer's interests and of the standards of behavior which the employer has a right to expect of its employees. It was not necessary to have an employer's

rule where the act itself is contrary to the motor vehicle laws of the Commonwealth: *Detterer Unemployment Compensation Case,* 168 Pa. Superior Ct. 291, 77 A. 2d 886; *Weimer Unemployment Compensation Case,* 176 Pa. Superior Ct. 348, 107 A. 2d 607; *Gagliardi Unemployment Compensation Case,* 186 Pa. Superior Ct. 142, 141 A. 2d 410.

In addition, there was sufficient evidence in this record to justify a finding by the board that the claimant's action in taking the car to his home in Scranton, which was located outside of the district in which he was employed, was contrary to the rules and regulations covering the operation of a State car. The employer representative, Albert Crissey, gave testimony from which the board could make such a finding.

Decision affirmed.

---

DISSENTING OPINION BY FLOOD, J.:

In this case the connection of the applicant's "wilful misconduct" with his work is more tenuous than in any in which this Court has heretofore approved the denial of compensation on this ground. See the cases collected in 33 P. L. E. 510-519 (Social Welfare §§64-68, inc.). The statute provides that the misconduct which causes the discharge of the applicant, to be disqualifying, must be "connected with his work". Act of December 5, 1936, P. L. (1937) 2897, §402(e), as amended August 24, 1953, P. L. 1397, §4, 43 PS §802(e). The speeding charge which is the basis upon which the board found wilful misconduct, did not occur on the premises or during working hours and had nothing to do with the work the applicant was employed to do as a master mechanic. Nor was it such conduct, such as excessive drinking, as would prevent him from doing his job when he arrived at his place of work or such as would prevent him from coming to work or make him late for work. Nor was

it the conviction of a crime involving moral turpitude or dishonesty, as in *Department of Labor and Industry v. Unemployment Compensation Board of Review,* 148 Pa. Superior Ct. 249, 24 A. 2d 924 (1942).

I am not prepared to concur in the broad propositions that any use of the employer's property so as to bring criticism upon the employer is "wilful misconduct" under the act, or that a violation of the speeding laws, even in the case of this employer, is ipso facto "wilful misconduct" irrespective of the employer's rules or regulations on the subject, if it is not work connected. Even if such conduct had occurred more than once, there is no evidence that the employer, if he knew of the earlier violation, had warned against its repetition.

Finally, I find nothing in the record upon which to base the board's finding that the applicant was furnished a booklet covering rules or regulations of the Turnpike Commission or that there was any such booklet which covered either the subject of speeding or taking cars out of the district. Mr. Crissey's testimony was merely that an employee could take his car home if he lived in the district. He did not testify either that there were any written regulations on this subject, or that any policy or rule against taking the car out of the district was communicated to the applicant, nor did he give any other testimony from which the board could find that taking the car out of the district was a violation of the rules and regulations of the employer. The only testimony on this subject was that of the applicant himself who said (N.T. 4) that Mr. Filter and Mr. Crissey, in January, had him come into the office and sign a book which "said you couldn't take the car out of the State". Further, neither the referee nor the board made any finding as to a violation in taking the car out of the district but based their decision entirely upon the speeding viola-

tion. It is the speeding violation only with which we are concerned on this appeal.

An employer may require that his employees be exemplary citizens off the job as well as on. In the absence of a contract providing otherwise, he may discharge them for failing to live up to this high standard. But a fall from grace does not disqualify the unfortunate sinner from receiving unemployment compensation upon his discharge unless his dereliction is connected with his work. I do not believe that the offence of the applicant here was connected with his work in the sense in which that phrase is used in the act.

I would reverse the board's finding of wilful misconduct under the evidence in this case.