Michael **BUDZANOSKI**, Petitioner,

v.

**DISTRICT UNEMPLOYMENT COMPENSATION BOARD**, Respondent.

No. 7882.

District of Columbia Court of Appeals.
Argued March 19, 1974.

Decided Oct. 17, 1974.

Michael Budzanoski, pro se.

George A. Ross, Washington, D. C., with whom Russell L. Carter and Bill L. Smith, Washington, D. C., were on the brief, for respondent.

Before REILLY, Chief Judge, and KERN and NEBEKER, Associate Judges.

PER CURIAM:

Petitioner seeks review[1] of a determination of the District of Columbia Unemployment Compensation Board (the Board) disqualifying him from receiving unemployment benefits under the District of Columbia Unemployment Compensation Act[2] (the Act) for a period of ten weeks. The appeals examiner of the Board concluded that petitioner was separated from his most recent employment as wage rate director of the United Mine Workers of

America as a result of court action upon his conviction for violations of Section 209 of the Labor-Management Reporting and Disclosure Act of 1959 (also known as the Landrum-Griffin Act), 29 U.S.C. § 439 (1970). The Board affirmed this determination concluding that petitioner's actions in violation of Landrum-Griffin constituted such misconduct as defined by the Act[3] as to subject him to disqualification for the benefits provided by the Act.[4]

Petitioner contends as a matter of law that the particular activities for which he was convicted did not constitute misconduct within the meaning of the Act because his employer would not have discharged him but for the mandatory provisions of Landrum-Griffin since in the eyes of his employer he was guilty of no misconduct in the course of his most recent work. We affirm.

A review of the record reveals that petitioner was last employed on October 27, 1972, as president of District 5, United Mine Workers of America (the local union) in Pittsburgh, Pennsylvania and simultaneously as wage rate director, UMWA (the international union) in Washington, D. C. His total salary for both jobs was $30,000 per annum—$23,000 from the local union and $7,000 from the international union.

Petitioner had been elected president of the local union in 1966, and was convicted in 1971 of violating Landrum-Griffin by falsifying financial records his union was required by law to keep. He immediately appealed his conviction but while his appeal was still pending, not only continued as the local's president but also was hired on February 1, 1972, as the wage rate director by the international union. In October 1972, the United States Department of Justice advised him that his conviction for Landrum-Griffin violations

1. The scope of this court's review is set forth in D.C.Code 1973, § 46–312(a).

2. D.C.Code 1973, § 46–301 et seq.

3. D.C.Code 1973, § 46–310(b).

4. *Id.*

had been finally upheld on October 25th and consequently his further employment with any labor organization for the next 5 years would subject him *and* the employing organization to possible criminal prosecution.

The United States Department of Labor had previously assumed monitorship of the UMWA and its monitors in both Washington and Pittsburgh immediately notified petitioner that his salary would be stopped effective October 27, 1972. Petitioner resigned as president of the local union on November 1, 1972, but never did officially resign as wage rate director of the international union.

Petitioner applied for unemployment benefits in Pennsylvania based on his job with the local union. He was disqualified for leaving his employment without good cause; and when his allowable benefits expired there, he applied for unemployment compensation here based on his job in Washington, D. C. with the international union. The Board ultimately found· that petitioner's separation from his most recent employment was due to the fact that his petition for certiorari to the Supreme Court from his convictions under Landrum-Griffin was denied and that separation from suitable work under those circumstances was tantamount to a discharge for misconduct.

Our statute provides in applicable part:

An individual who has been discharged for misconduct occurring in the course of his most recent work proved to the satisfaction of the Board shall not be eligible for benefits with respect to the week in which such discharge occurred and for not less than four nor more than nine weeks of consecutive unemployment immediately following such week, as determined by the Board in such case according to the seriousness of the misconduct. In addition such individual's

total benefit amount shall be reduced in a sum equal to the number of weeks of disqualification multiplied by his weekly benefit amount. (D.C.Code 1973, § 46–310(b)).

This court has stated that this statutory misconduct provision is intended to prevent accumulated unemployment compensation funds from being dissipated as payments for disqualifying acts of employees rather than to be expended to assist former employees who lack suitable job opportunities. Hickenbottom v. District Unemployment Compensation Board, D.C.App., 273 A.2d 475 (1971). In that case, the court adopted the construction of our Act consistent with the definition given by a majority of other state courts defining the scope of similar legislation (*see* Annot., 146 A.L.R. 243–45 (1943)). Thus, we quoted with approval the following definition of misconduct:

[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, *a disregard of standards of behavior which the employer has a right to expect of his employees,* or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. (Emphasis added.) [Hickenbottom v. DUCB, *supra* at 477–478, quoting 48 Am.Jur., Social Security, Unemployment Insurance, etc., §· 38 (1943).[5]

Assuming arguendo that the international union would not have discharged petitioner except for the mandatory provisions of Landrum-Griffin, certainly that union had a right to expect its employees to abide by laws governing them (in this instance, the Landrum-Griffin Act). Thus petitioner's conduct did not meet the standards of behavior to which his employer,

5. *See also,* Kartsonis v. DUCB, D.C.App., 289 A.2d 370 (1972); Green v. DUCB, D.C.App., 273 A.2d 479 (1971).

the international union, was entitled. Even in Pennsylvauia, where statutory disqualification is occasioned by "willful misconduct", it has been held that no intent to inflict harm on the employer is necessary—only conscious indifference to the requirements of the occupation and the perpetration of the wrong. Allen v. Unemployment Compensation Board of Review, 168 Pa.Super. 295, 77 A.2d 889, 890 (1951).

While it is true that some courts have concluded that individuals convicted of crimes are disqualified from receiving benefits on the theory that they left work voluntarily *without good cause* rather than due to discharge for misconduct,[6] those cases involved crimes committed by employees usually *not* work related.

We note, too, that here petitioner's own misconduct, *viz.*, violation of Landrum-Griffin, now precludes him from continuing work for the union for 5 years. Accordingly, his situation is analogous to the employee in Grimble v. Brown, 247 La. 376, 171 So.2d 653 (1965), who was discharged because he was unable to perform for his employer his duties as a truck driver following the loss of his driver's license for operating a vehicle while intoxicated off the job. The Supreme Court of Louisiana held that any act of misconduct which renders an employee ineligible to perform the tasks of his employment or unable to report for work and perform the duties of his employment for any unreasonable length of time will disqualify him from unemployment compensation and it is not necessary that the act of misconduct occurred during working hours or in the course of his employment.

Finally, the federal Circuit Court here has reminded us that the benefits of unemployment compensation statutes are generally limited to aid those who become unemployed "through no fault of their own."[7]

■ ■ Petitioner also argues that *no* misconduct occurred in the course of his "most recent" work because: (1) his conviction occurred in May 1971, (2) at that time he was employed only as president of the *local* union, and (3) his "most recent" work as wage rate director for the international union did not commence until some ten months after his Landrum-Griffin conviction. Without determining whether the local union in Pennsylvania is a completely autonomous entity separate from the international union, it seems to us that petitioner's "most recent" work was not *solely* with the international union. Petitioner, by his own admission, held *both* his position as wage rate director for the international union *and* his position as president of the local union simultaneously from February 1, 1972 until October 27, 1972. Both jobs then were his "most recent" work. Since his conviction for violations of the Landrum-Griffin Act was not finally affirmed until October 25, 1972, it is clear that his misconduct (though not the actions which led to his conviction) occurred in the course of his most recent employment, and that the facts legally support the appeals examiner's conclusions.

For the reasons assigned, the determination of the Board is

Affirmed.

6. Fogle v. Unemployment Compensation Board of Review, 197 Pa.Super. 18, 176 A. 2d 157 (1961). *But see* Sullivan v. Appeal Board of Michigan Employment Security Comm'n, 358 Mich. 338, 100 N.W.2d 713 (1960).

7. Von Stauffenberg v. DUCB, 148 U.S.App. D.C. 104, 107, 459 F.2d 1128, 1131 (1972).