Jacqueline FEAGIN *v.* William F. EVERETT, Director
of Labor, and FLIPPIN SCHOOLS

E 82-272                               652 S.W.2d 839

Court of Appeals of Arkansas
Opinion delivered June 29, 1983

60

*Kaplan, Hollingsworth & Brewer, P.A.,* by: *Ron Heller,* for appellant.

*Bruce Bokony,* for appellees.

DONALD L. CORBIN, Judge. This appeal is from a decision of the Board of Review disqualifying appellant from receiving unemployment compensation benefits pursuant to Ark. Stat. Ann. § 81-1106 (b) (1) (Repl. 1976). The Board held that appellant was guilty of misconduct in connection with the work based on a finding that appellant knowingly engaged in a course of conduct which was in violation of the ethical and moral standards to which the employer had a right to expect and that her actions were a willful disregard of the employer's best interest within the meaning of the above-cited statute.

Appellant was employed by the Flippin School District as a teacher. On January 16, 1982, appellant's husband was injured in a one-car automobile accident. After appellant's husband was taken to the hospital, members of the Marion County Sheriff's Department went to the accident scene to investigate and to insure that no other person had been injured. During the investigation, the sheriff's deputies found hashish in and around the car. They returned to the hospital where appellant and her husband were questioned by the Sheriff's Office, at which time appellant consented to a search of their home. As a result of the search, the sheriff's deputies found drug paraphernalia, marijuana, and hash oil.

On Monday, January 18, 1982, appellant called the principal of the school and told him that she would not be at school because her husband was in the hospital. Later that day appellant and her husband were charged with possession of a controlled substance. News of the arrest was carried on local radio programs and in newspaper reports. On January 21, 1982, appellant was notified by the superintendent that she was suspended with pay. On March 11, 1982, a school board hearing was held and appellant's teaching contract was terminated.

On March 18, appellant filed a claim for unemployment compensation benefits which was denied by the agency on April 8. Appellant appealed and two Appeals Tribunal hearings were held. The appeals referee reversed the agency and found that appellant had been discharged for reasons other than misconduct in connection with the work. The employer appealed that decision to the Board of Review and the Board reversed the appeal referee's decision and denied benefits under the provisions of Ark. Stat. Ann. § 81-1106 (b) (1) (Repl. 1976). It is from that decision that appellant takes this appeal.

Appellant argues on appeal that the decision of the Board of Review that she was discharged because of misconduct connected with her work is not supported by substantial evidence.

On appellate review the findings of fact of the Board of Review are conclusive if supported by substantial evidence, and we must give the successful party the benefit of every inference that can be drawn from the testimony, viewing it in the light most favorable to the successful party. *Harris* v. *Daniels*, 263 Ark. 897, 567 S.W.2d 954 (1978). Even though there is evidence upon which the Board of Review might have reached a different result, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its result upon the evidence before it, and a review court is not privileged to substitute its findings for those of the Board even though the court might have reached a different conclusion if it had made the original determination upon the same evidence. *Hodnett* v. *Daniels*, 271 Ark. 479, 609 S.W.2d 122 (Ark. App. 1980).

Ark. Stat. Ann. § 81-1106 (b) (1) (Repl. 1976) provides:

. . . [A]n individual shall be disqualified for benefits: (1) If he is discharged from his last work for misconduct in connection with the work.

This court has on many occasions construed the term "misconduct". In *Nibco, Inc.* v. *Metcalf, et al.*, 1 Ark. App. 114, 613 S.W.2d 612 (1981), this court abstracted pertinent

decisions dealing with the term "misconduct" and summarized those decisions as follows:

> And while the language used is not exactly the same in each case, they say that misconduct involves: (1) disregard of the employer's interests, (2) violation of the employer's rules, (3) disregard of the standards of behavior which the employer has a right to expect of his employees, and (4) disregard of the employee's duties and obligations to his employer.

> To constitute misconduct, however, the definitions require more than mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies, ordinary negligence in isolated instances, or good faith error in judgment or discretion. There must be an intentional or deliberate violation, a willful or wanton disregard, or carelessness or negligence of such degree or recurrence as to manifest wrongful intent or evil design.

Whether or not the acts of the employee are willful and wanton or merely result from inefficiency, unsatisfactory conduct or unintentional failure of performance, is a question of fact for the Board of Review to determine. *Arlington Hotel* v. *Employment Security Division*, 3 Ark. App. 281, 625 S.W.2d 551 (1981).

Appellant argues that her conduct, as a matter of law, cannot be said to amount to misconduct because: (1) she was acquitted of criminal charges, (2) she did not admit to the use of marijuana until the time of her criminal trial, thus, she could not have been discharged on the grounds of this statement and, (3) she had no control over the amount or type of publicity that arose from her arrest and thus her actions could not be said to be willful or intentional.

As to appellant's first point above, this court has recently held in *Lakeside School* v. *Harrington*, 8 Ark. App. 205, 649 S.W.2d 847 (1983), that "[t]he disposition of criminal charges is a factor which the Board may consider in determining whether a worker's actions constituted 'mis-

conduct in connection with the work', but it does not decide the issue." In *Food Fair Stores, Inc.* v. *Commonwealth of Pennsylvania,* 11 Pa. Cmwlth. 535, 314 A.2d 528 (1974), the court held that the employee was guilty of willful misconduct precluding unemployment compensation benefits even though he was acquitted of criminal charges arising out of the activity which brought about his discharge.

Appellant's contention that her admission to the use of marijuana during her criminal trial could have no bearing on her discharge since it was made after her discharge is without merit. There is no evidence that her admission to the use of marijuana was the basis for her discharge, but instead, the basis of her discharge was her involvement with illegal drugs which brought about her arrest and the related publicity which rendered her ineffective as a classroom teacher.

Appellant's argument that her acts were not willful because she had no control over her personal life becoming a matter of public knowledge is not determinative. Through the course of events, her conduct did become a matter of public knowledge and interest and appellant knew or should have known that her conduct, if and when it became known, would be against her employer's best interest. Moreover, we reiterate, "whether or not the acts of the employee are willful and wanton or merely result from inefficiency, unsatisfactory conduct or unintentional failure of performance is a question of fact for the Board of Review to determine." *Arlington Hotel* v. *Employment Security Division, supra.*

We hold that the Board of Review's decision that appellant's conduct constituted misconduct is supported by substantial evidence.

As stated above, the principle of what constitutes "misconduct" under Ark. Stat. Ann. § 81-1106 (b) (1) has been construed by this Court on many occasions and is relatively well-settled. Less settled is what constitutes "misconduct *in connection with the work*" when the actions purporting to constitute misconduct occur while a claimant

is off-duty and not on the employer's premises, which is the question presented in the case at bar.

Statutes are to be construed with reference to the public policy which they are designed to accomplish. *Ark. Tax Commission* v. *Crittenden County*, 183 Ark. 738, 38 S.W.2d 318 (1931); *Commercial Printing Co.* v. *Rush*, 261 Ark. 468, 549 S.W.2d 790 (1977). The declaration of state public policy as applied to our Employment Security Act, codified at Ark. Stat. Ann. § 81-1101 (Repl. 1976), provides in pertinent part:

> The Legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this State require the enactment of this measure, under the police power of the State, for the compulsory setting aside of unemployment reserves to be used *for the benefit of persons unemployed through no fault of their own.* (Emphasis ours.)

As the Supreme Court stated in *Little Rock Furniture Mfg. Co.* v. *Commr. of Labor*, 227 Ark. 288, 298 S.W.2d 56 (1957), our Employment Security Act must be given an interpretation in keeping with the declaration of state policy. The intent of the Arkansas Legislature controls the construction of our Employment Security laws. We believe that the legislature did not intend to limit misconduct connected with the employee's work to misconduct which occurred only during the hours of employment and on the employer's premises. If it had, the language used in Ark. Stat. Ann. § 81-1106 (b) (1) (Repl. 1976), would have undoubtedly expressed that intent.

Although this is a case of first impression in Arkansas, several other jurisdictions have considered the issues raised in off-duty misconduct cases and have construed statutory language identical to that contained in Ark. Stat. Ann. § 81-1106 (b) (1) (Repl. 1976). The concept that misconduct in connection with the work can occur while an employee is off-duty has long been recognized by a majority of states which have addressed the issue. See 76 Am.Jur.2d *Unemployment Compensation* § 57 (1974). The following lan-

guage is found in the 1958 case of *Employment Security Board* v. *Lecates,* 218 Md. 202, 145 A.2d 840:

> We think we may assume that the legislature did not intend to limit misconduct "connected with" the employee's work to misconduct which occurred during the hours of employment and on the employer's premises. If it had, the language used would have undoubtedly expressed that intent. Since no such limitation was indicated, it is obvious the provisions of the statute were intended to deny unemployment compensation to a claimant who was discharged — and hence unemployed — because of misconduct regardless of when or where it occurred so long as such misconduct was in law *connected* with the employee's work.

The following states are in agreement with Maryland in its interpretation of the term "misconduct in connection with the work": Louisiana, *Grimble* v. *Brown,* 247 La. 376, 171 So.2d 653, *cert. denied,* 382 U.S. 861 (1965); Idaho, *O'Neal* v. *Employment Security Agency,* 89 Idaho 313, 404 P.2d 600 (1964); Wisconsin, *Gregory* v. *Anderson,* 14 Wis.2d 130, 109 N.W.2d 675 (1961); Texas, *Texas Employment Comm.* v. *Ryan,* 481 S.W.2d 172 (1972); Pennsylvania, *Cadden* v. *Unemployment Compensation Board of Review,* 195 Pa.Super. 159, 169 A.2d 334 (1961); Oregon, *Giese* v. *Employment Division,* 27 Or. App. 929, 557 P.2d 1354 (1976); D.C., *Budzanoski* v. *Dist. Unemployment Compensation Board,* 326 A.2d 243 (1974); Tennessee, *Weaver* v. *Wallace,* 565 S.W.2d 867 (1978).

After having determined that off-duty activities can constitute misconduct, we must now determine what factors must be present in order to find that a claimant's off-duty activities constitute misconduct in connection with the work. It should initially be noted that it would be impossible to list every situation where misconduct in connection with the work might occur. It would also be impossible to address every possible hypothetical factual circumstance which might present the question of whether misconduct in connection with the work has occurred. In cases which involve off-duty misconduct, as in cases involving on-duty

misconduct, the factors of each case will vary since different employers and employees have differing rights and obligations and each case must be decided on its particular facts. *Jackson* v. *Bible,* 611 S.W.2d 588 (Tenn. Ct. App. 1980); *Chrysler Corp.* v. *Review Board of the Indiana Employment Security Division,* 185 N.E.2d 25 (1962). Therefore, it appears that some test should be set forth in order that employees, employers and the administrative agency might have guidance as to when off-duty misconduct will be considered misconduct "in connection with the work".

We choose to apply the elements enunciated by the Washington Supreme Court in *Nelson* v. *Employment Security Department,* 98 Wash.2d 370, 655 P.2d 242 (1982), in reversing the Washington Court of Appeals, 31 Wash. App. 621, 644 P.2d 145. The claimant there was employed as a cashier for a publishing company and while off-duty, she was charged with shoplifting and subsequently entered a guilty plea to the charge. She personally informed her employer of the incident and was fired. The issue in the case was whether her actions constituted misconduct in connection with the work. The unemployment administration found her actions constituted misconduct in connection with her work which was upheld by the Washington Court of Appeals. The Court of Appeals found that since the claimant's job required her to handle money, she should have known that her conviction for shoplifting would influence her trustworthiness in the eyes of her employer and peers. The court also found that the claimant should have known that conduct which impugned her trustworthiness would directly affect her ability to do her job, and thus would be adverse to her employer's interest.

In analyzing the relationship between the claimant's conduct and her work, the Court of Appeals stated:

Thus, we support the basic approach of the Department, which we believe can be broken down to these elements: to establish misconduct connected with work the employer must show, by a preponderance of evidence, that the employee's conduct (1) had some nexus with her work; (2) resulted in some harm to the

employer's interest, and (3) was in fact conduct which was (a) violative of some code of behavior impliedly contracted between employer and employee, and (b) done with intent or knowledge that the employer's interest would suffer.

The Supreme Court of Washington, in reversing the decision of the Court of Appeals denying unemployment benefits to the claimant, adopted in part the rule set forth by the Court of Appeals in determining whether an employee's actions constitute "misconduct in connection with the work". The court stated:

> . . . We adopt the rule developed by the Court of Appeals, in *Nelson* v. *Department of Employment Security, supra,* with one change. The Court of Appeals required the employer to demonstrate conduct "violative of some code of behavior *impliedly* contracted between employer and employee". (Italics ours.) We believe to insert the word "impliedly" in the test makes it far too broad. If, as alleged here, certain conduct would go to the nexus of the employee's work and would result in harm to an employer's interest, it is reasonable to require this conduct must be the subject of a contractual agreement between employer and employee. This agreement need not be a formal written contract between employer and employee and may be reasonable rules and regulations of the employer of which the employee has knowledge and is expected to follow . . .

In applying the standards set out in *Nelson, supra,* we must first determine whether a nexus exists between appellant's work and her off-duty activities. The Supreme Court of Louisiana in *Grimble* v. *Brown, supra,* discussed when nexus with the work exists:

> It will not do to say that, because an act of misconduct relates to the "private life" of the employee, it is essentially not connected with his employment for in these cases the question for determination must always be whether the result of the misconduct has adversely

affected the employee's ability and capacity to perform his duties in an appreciable degree. If it has, then it follows that it is contrary to the employer's interest and in . . . disregard of standards of behavior which the employer has the right to expect of his employee . . . Thus, by this criterion alone there is nexus.

We find the following testimony pertinent wherein the superintendent explained the position of trust in which teachers in the Flippin School District found themselves:

Flippin School District, which is composed of the communities of Flippin and Bull Shoals, and their surrounding rural areas, retain the image of small community America, in which the home, school, church, and their combined and separate associated values are highly prized or valued by the citizenry as a whole. The citizenry, therefore, would not approve of the continued employment of this teacher. The teachers have traditionally and historically been expected to exemplify those good values inherent to the local school community, and by instruction and personal example, transmit these values to the young and impressionable students entrusted on a daily basis into the teacher's care. Results of my investigation led to the following conclusion: In my professional judgment, Mrs. Feagin's presence as a teacher would be ineffective, and would hinder the local process, and I recommended termination.

From a review of the evidence, we hold that there was a sufficient nexus with her work, even though the activities complained of occurred while she was off-duty and off the employer's premises.

Next, we must determine whether appellant's off-duty activities resulted in any harm to her employer's interests. There is substantial evidence in the record, specifically in the testimony of the superintendent, that appellant's ability to teach in the Flippin Schools was severely harmed by her arrest and the attendant publicity. Thus, the second standard set out in *Nelson, supra,* has been complied with.

Finally, we must determine whether the conduct of appellant (a) was violative of some code of behavior contracted for between the employer and the employee and, (b) whether her conduct was done with the intent or knowledge that her employer's interests would suffer. It is important to note here that the third *Nelson* standard was qualified by language to the effect that the agreement between employer and employee need not be a formal written contract and could consist of reasonable rules and regulations which the employee had knowledge of and was expected to follow. We hold that there is substantial evidence in the record that appellant had both notice and knowledge that her involvement with an illegal substance was a violation of the standards expected of her as a teacher, guide and counselor to her students and as a representative of the Flippin School District.

The Flippin School Board policy manual provided the following statement regarding a teacher's responsibilities:

> To maintain such relationship with the students as is conducive to and consistent with desirable progress and growth in all areas of good citizenship.

The Flippin School Board policy manual provided the following statement regarding cause for dismissal of all employees as follows:

> The Board of Education may dismiss any school employee for one or more causes. Some of these may include poor health, incompetency, insubordination, immorality and undesirable personal traits.

Appellant acknowledged acceptance of her responsibilities during the Appeals Tribunal hearing as evidenced by the following testimony:

> ATKINS: Mrs. Feagin — Mrs. Feagin, do you accept the concept espoused in the manual put out by the School Board, that you are a moral instructor of these children?

CLAIMANT: Yes Sir, I do.

When reviewing unemployment benefit cases which involve off-duty misconduct, we recognize that some professions require higher standards of behavior than do others. We believe the teaching profession is one which requires a higher standard of its practitioners. The very nature of their employment requires such. Teachers serve as examples and role models for their students and we find it difficult, if not impossible, to find from the evidence presented that appellant, a college-educated individual, did not have knowledge of this. We are very much aware of the problems associated with the use of drugs by school-age children. Non-association with illegal substances is certainly a reasonable regulation of the school board of which appellant had both knowledge and notice. Appellant, a college-educated individual, knew or should have known that her involvement with illegal drugs might cause her to be arrested and that the attendant publicity would have an adverse effect on her job and that the school district would suffer.

We hold that there is substantial evidence in the record to support the Board's finding that appellant violated the "ethical and moral standards which the employer had a right to expect" and that such actions were done in "willful disregard of the employer's best interest". In so holding we adopt the standards adopted by the Supreme Court of Washington in *Nelson, supra,* in cases involving a determination of what constitutes "misconduct in connection with the work" where the misconduct took place while the employee was off-duty and off the employer's premises. It is important to note in adopting this test that the fact situation in the case at bar involves a narrow interpretation of what constitutes "misconduct in connection with the work" and that future decisions will, of course, be determined on a case-by-case basis.

Affirmed.

COOPER and GLAZE, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. While I agree with the analysis of the majority in regard to the appellant's

actions and their nexus with her work, and with the analysis of the potential harm to her employer's interests, I cannot agree that her conduct violated a code of behavior which her employer had a right to expect. The majority has cited no case which goes as far as this one does, nor have I found one. In *Grimbel* v. *Brown*, 247 La. 376, 171 So.2d 653, *cert. denied*, 382 U.S. 861 (1965), the claimant was a truck driver who was unable to perform his job because he had lost his driver's license. *Johnson* v. *Board of Commissioners of the Port of New Orleans*, 348 So.2d 1289 (La. App. 1977), involved a policeman's violation of a specific rule promulgated by his employer. In *O'Neal* v. *Employment Security Agency*, 89 Idaho 313, 404 P.2d 600 (1965), the employee violated a specific rule promulgated by his employer which forbade "infamous, dishonest, immoral or notoriously disgraceful conduct". The employee had been charged with a felony involving immorality. *South Central Bell Telephone Co.* v. *Sumrall*, 414 So.2d 876 (La. App. 1982), involved an employee who was discharged for violation of a company rule which prohibited the possession, sale, or use of controlled substances while on- or off-duty. The court held that such a rule was reasonable in light of the function of public utilities and that the employee's knowing violation of the company rule constituted misconduct. Likewise, in *Employment Security Board of Maryland* v. *Lecates*, 218 Md. 202, 145 A.2d 840 (1958), the unauthorized use of a company truck without an operator's license and the failure to report the subsequent accident was held to be misconduct.

In *Gregory* v. *Anderson*, 14 Wis. 2d 130, 109 N.W.2d 675 (1961), the Wisconsin Supreme Court found misconduct in connection with the work where off-duty drinking was involved. This violated not only a rule imposed by the employer, but a specific, special agreement which had been signed by the employee and which was made a part of the employment contract. *Texas Employment Commission* v. *Ryan*, 481 S.W.2d 172 (Tex. Civ. App. 1972), involved a reduction in unemployment compensation benefits because a worker had removed his employer's oxygen bottle from the company premises and personally used part of the contents, in violation of the employer's rule. *Cadden* v. *Unemployment Compensation Board of Review*, 195 Pa. Super. 159, 169

A.2d 334 (1961), involved a state employee who was charged with speeding in a state vehicle and who was discharged for removing a state vehicle from his district, in violation of departmental regulations. *Budzanoski* v. *District Unemployment Compensation Board,* 326 A.2d 243 (D.C. 1974); does not really seem to involve off-duty misconduct, but rather the question of whether the claimant had been discharged from his "most recent" work for misconduct in connection with the work. *Weaver* v. *Wallace,* 565 S.W.2d 867 (Tenn. 1978), the last case cited by the majority for the proposition that off-duty activities can constitute misconduct in connection with the work, deserves more attention. Weaver was employed by the United States government as a forklift operator. He was discharged because of convictions for assault and battery, carrying a dangerous weapon, drunkenness, and possession of marijuana. Because the first three convictions predated his employment, the Tennessee Supreme Court held that, under the circumstances, those convictions could not be a valid basis for denial of unemployment compensation benefits. Therefore, the question presented was whether the claimant's arrest and conviction for possession of marijuana and his suspended sentence amounted to misconduct in connection with the work. The court noted that ". . . an essential element of 'misconduct connected with the work' is a breach of duty owed to the employer, as distinguished from society in general." Further, the court stated:

> Unless the employee's wrongdoing violates a duty owed to the employer, it cannot amount to that 'misconduct connected with the work' which serves to disqualify him to receive unemployment insurance benefits, although it may fully justify the employer in discharging him.

The court found that the claimant's possession of marijuana, and his subsequent conviction, did not violate any duty owed to the employer.

In all these cases where benefits were denied, there was either a violation of a known company rule or a misuse of the employer's property. None of these cases stand for the

proposition that off-duty misconduct which neither involves company policy nor the violation of an employer's specific rule constitutes misconduct in connection with the work.

*Giese* v. *Employment Division,* 27 Or. App. 929, 557 P.2d 1354 (1976), involved a tenured French professor who was indicted, tried, and convicted of conspiring to destroy United States government buildings. In holding that he was not disqualified from receiving unemployment compensation benefits, the court stated:

> ... even though the employer may be amply justified in dismissing the employee as is the case here, that justification is not always grounds for denying unemployment compensation benefits to the dismissed worker.

In analyzing the nature of the misconduct and its connection with the work, the court found that the alleged conduct was certainly serious enough to constitute misconduct. However, the court stated:

> [i]t was not, however, shown to be connected with claimant's work; rather it was conduct off the working premises and outside the course and scope of claimant's employment. We conclude that the phrase "connected with his work" was added to our statute by the legislature to draw a distinction between misconduct while off-duty and misconduct in the course and scope of employment.

Although the majority opinion purports to adopt the rule applied by the Washington Supreme Court in *Nelson* v. *Department of Employment Security,* 98 Wash.2d 370, 655 P.2d 242 (1982), I find the majority opinion directly in line with the Washington Court of Appeals decision in *Nelson* v. *Employment Security Department,* 31 Wash. App. 621, 644 P.2d 145 (1982). The court of appeals decision allowed a finding of misconduct where the conduct was violative of some code of conduct *impliedly* contracted for between the employer and the employee. The notion of an implied

contract as to conduct was specifically rejected by the Washington Supreme Court, and I think that decision was sound. In modifying the decision of the court of appeals, the Washington Supreme Court stated:

> ... we adopt the rule developed by the Court of Appeals in *Nelson* v. *Department of Empl. Sec., supra,* with one change. The Court of Appeals required the employer to demonstrate conduct "violative of some code of behavior *impliedly* contracted between employer and employee". (Italics ours.) We believe to insert the word "impliedly" in the test makes it far too broad. If, as alleged here, certain conduct would go to the nexus of the employee's work and would result in harm to an employer's interest, it is reasonable to require this conduct must be the subject of a contractual agreement between employer and employee. This agreement need not be a formal written contract between employer and employee and may be reasonable rules and regulations of the employer of which the employee has knowledge and is expected to follow. *See* Note, *Unemployment Compensation — Misconduct — Disqualification for Violation of an Off-Duty Regulation,* 1962 Wis. L. Rev. 392.

The rule in Arkansas, however, has not heretofore required a specific contract as to behavior, but has allowed "misconduct" to be found where the employee's actions constitute "... a disregard of the standard of behavior which the employer has a right to expect of his employees". *Stagecoach Motel* v. *Krause,* 267 Ark. 1093, 593 S.W.2d 495 (Ark. App. 1980). The application of that rule has been to cases involving on-the-job "misconduct", or "misconduct" based on a failure to report for work, rather than off-duty actions allegedly constituting "misconduct". *See Jeffreys* v. *Everett,* 6 Ark. App. 265, 640 S.W.2d 465 (1982) (tardiness and absenteeism); *Hamby* v. *Everett,* 4 Ark. App. 52, 627 S.W.2d 266 (1982) (misuse of company property); *Brewer* v. *Everett,* 3 Ark. App. 59, 621 S.W.2d 883 (1981) (ordinary on-the-job negligence held not misconduct); *Arlington Hotel* v. *Employment Security Division,* 3 Ark. App. 281, 625 S.W.2d 551 (1981) (violation of employer's rules on-the-job); *Hodges*

v. *Everett,* 2 Ark. App. 125, 617 S.W.2d 29 (1981) (fighting on-the-job); *Reynolds* v. *Daniels,* 1 Ark. App. 262, 614 S.W.2d 525 (1981) (profanity directed toward supervisor); *Nibco, Inc.* v. *Metcalf,* 1 Ark. App. 114, 613 S.W.2d 612 (1981) (failure to communicate medical status to employer); *Weavers* v. *Daniels,* 1 Ark. App. 55, 613 S.W.2d 108 (1981) (absences and intoxication on-the-job after warnings); *Victor Industries Corp.* v. *Daniels,* 1 Ark. App. 6, 611 S.W.2d 794 (1981) (excessive absences).

I am at a total loss to understand how the majority can say that "there is substantial evidence in the record that appellant had both notice and knowledge that her involvement with an illegal substance was a violation of the standards expected of her as a teacher, guide and counselor to her students and as a representative of the Flippin School District." Not only is there no substantial evidence to support such a conclusion, there is no evidence at all which justifies such a statement. It is true that the policy manual provided general guidelines as to a teacher's duties, and listed various grounds for dismissal, but the right to discharge Ms. Feagin is not at issue in this case and never has been.

I am also troubled by that portion of the majority opinion which deals with the high standards required of teachers. The majority opinion concludes that non-association with controlled substances was "a reasonable regulation of the school board of which appellant had both knowledge and notice". There exists *no regulation* concerning illegal drugs in the record of this case, and I cannot fathom how the appellant can be held to have been aware of something which never existed.

The real reason for the appellant's discharge was the adverse public reaction to her arrest and the school board's feeling that her effectiveness as a teacher had been irreparably damaged. Probably the board was right, but that finding has little to do with the question of whether her actions constituted misconduct in connection with the work. I wholeheartedly agree with Judge Flood's statement

in his dissenting opinion in *Cadden* v. *Unemployment Compensation Board of Review, supra,* where he said:

> An employer may require that his employees be exemplary citizens off the job as well as on. In the absence of a contract providing otherwise, he may discharge them for failing to live up to this high standard. But a fall from grace does not disqualify the unfortunate sinner from receiving unemployment compensation upon his discharge unless his dereliction is connected with his work.

I would follow the Washington Supreme Court's opinion in *Nelson, supra,* which the majority claims, but fails, to do and require more than an *implied* contract as to behavior while a worker is off-duty. An employer is free to adopt reasonable regulations concerning his employee's off-duty activities, and I think that is what fundamental fairness and due process requires. A system wherein off-duty misconduct and its connection with the work is determined by changeable public opinion is really no system at all, and is unfair to both the employer and the employee.

I respectfully dissent.

TOM GLAZE, Judge, dissenting. Although the majority purports to follow the rule adopted by the Washington Supreme Court in *Nelson* v. *Department of Employment Security,* 98 Wash.2d 370, 655 P.2d 242 (1982), rev'g 31 Wash. App. 604, 644 P.2d 145, it simply fails to do so. If it had, the majority would have reversed this case.

In *Nelson,* the claimant pleaded guilty to a shoplifting charge, and she was subsequently discharged by her employer for misconduct. The Employment Security Agency denied claimant benefits, finding her actions constituted misconduct in connection with her work. The Washington Court of Appeals affirmed the Agency decision, but the Washington Supreme Court reversed. In brief, the Washington Supreme Court adopted a rule which requires employers to establish reasonable rules and regulations defining the conduct expected of its employees; such rules

must circumscribe conduct which would go to the nexus of an employee's work and would result in harm to an employer's interest. In *Nelson,* the Court held that the claimant was entitled to unemployment benefits because the employer failed to provide any rules or regulations concerning a code of conduct expected of its employees. If, in the instant case, the majority were following the rule in *Nelson,* it would necessarily reverse this cause and direct that benefits be paid the claimant.

For the sake of clarity, my steadfast opinion is that an employer has a right to discharge an employee who admits to criminal conduct involving drugs. That, however, is not the issue in this case. The issue is whether the employee should be disqualified for unemployment benefits because of misconduct *in connection with the work.* As Judge Cooper points out in his dissent, Arkansas' case law has, without exception, required on-the-job misconduct of an employee before he or she is disqualified from benefits. Certainly, if off-duty misconduct is used to disqualify an employee from receiving benefits, the case law uniformly requires the employer to inform the employee concerning the conduct he or she is expected to follow. Otherwise, no one can possibly predict the type off-duty misconduct that the Board or this Court will label as work-connected. For instance, does it include an employee found guilty of speeding when the violation occurred when he was off-duty? Would it make a difference if he were employed as a delivery man or truck driver as opposed to a store clerk? Regardless of the type of one's employment, is misconduct always work-connected if an employee is guilty of a first DWI offense, even though the violation occurred when he was off-duty? If not, under what circumstances would it not be work-connected?

In adopting a rule that does not require the employer to informally or formally define the conduct expected of an employee, this Court is inviting unwarranted and unnecessary employer-employee disputes and appeals. I would reverse.