Mable JACKS, et al. *v.* Dewey STILES, Director of Labor,
and GEORGIA-PACIFIC CORPORATION

E 86-20                                           717 S.W.2d 828

Court of Appeals of Arkansas
Division I
Opinion delivered October 22, 1986

*Cross, Kearney & McKissic*, by: *Jesse L. Kearney*, for appellant.

*Ramsay, Cox, Lile, Bridgforth, Gilbert, Harrelson & Starling*, for appellee, Georgia-Pacific Corp.

*George Wise, Jr.*, for appellee, Director of Labor.

ERNIE E. WRIGHT, Special Judge. This is a multi-claimant appeal from the Board of Review. The Board, reversing the Appeal Tribunal decision, found that appellants left their employment by reason of a labor dispute, and denied them benefits under Ark. Stat. Ann. § 81-1105(f) (Repl. 1976). For reversal, appellants contend that the Board's decision is against the weight of the evidence and contrary to the law. We disagree and affirm.

Appellants are members of the United Paperworkers' International Union, Local 844. In August 1982, the union and the employer entered into a labor agreement to be in effect through July 31, 1985. Section 18 of the agreement provides:

> At any time after the anniversary date, if no agreement on the questions at issue has been reached, either party may give written notice to the other party of intent to terminate the agreement in ten (10) days. All the provisions of the agreement shall remain in force and effect until the specified time has elapsed. During the period attempts to reach an agreement shall be continued.

By August 1, 1985, negotiations between the union and the employer for a new agreement were at a standstill. On that day, the employer made its final offer to the union, and on August 9, the employer gave the union its ten days notice for termination of the agreement. The union gave its ten days notice to the employer on August 12 to terminate the labor agreement.

The testimony is conflicting as to the events of August 22,

1985. Edgar Lewis, the plant manager, testified that on the morning of August 22, he met with Lindell Hale, the local union president. He stated that he was confused by the union's notice of August 12, and he wanted clarification of it. Lewis testified that Hale stated that "at 3:00, we're going on strike." Lewis also testified that during negotiations, statements were made to the effect that "this was not going to be fun and games . . .," and he thought that meant violence. Lewis testified that, in light of these statements, the company decided to let the workers go home early.

At 1:00 p.m. on August 22, the employees were called to a meeting, and Lewis read a statement that the union had given notice of intent to terminate the contract at 3:00 p.m., that the company chose to end the shift ending at 3:00 p.m. at the time of the meeting, that the action was not a lockout, and that the employees would be paid for the remainder of the shift.

Mr. McFalls, international representative for the union and the local bargaining agent, testified that when he arrived at the plant at about 2:00 p.m. the workers were outside the plant, and that the gates were locked and workers had been told they could not go in. He further testified that the employer had stated that union members would have to resign their union membership before they could return to work.

Lewis testified the gates were not locked, and that guards had been posted, not to keep workers out, but to protect the property from any violence. Lewis stated that union members were not required to resign their membership before returning to work. He stated that workers who had inquired about returning were told that they could work, but they could be subject to a fine or punishment from the union for crossing the picket line.

McFalls testified that, at the time the union issued its ten days notice to the employer, it meant that if, at the end of that period, there was no agreement, "we would be on strike." It is undisputed that the union did began striking at about 3:00 p.m. on August 22.

▪ Ark. Stat. Ann. § 81-1105(f) (Repl. 1976) provides, in pertinent part:

If so found by the Director no individual may serve a

waiting period or be paid benefits for the duration of any period of unemployment if he lost his employment or has left his employment by reason of a labor dispute other than a lockout at the factory, establishment, or other premises at which he was employed . . .

On appeal, the findings of the Board of Review are deemed conclusive if they are supported by substantial evidence. Ark. Stat. Ann. § 81-1107(d)(7) (Repl. 1976); *Feagin v. Everett*, 9 Ark. App. 59, 652 S.W.2d 839 (1983). The scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. We may not substitute our findings for those of the Board even though we might have reached a different conclusion had we made the original determination upon the same evidence. *Shipley Baking Co. v. Stiles*, 17 Ark. App. 72, 703 S.W.2d 465 (1986). Therefore, at issue before us is not whether the decision of the Board of Review is against the weight of the evidence but whether there is substantial evidence to support the Board's finding that claimants left their employment because of a labor dispute and not a lockout.

The term "lockout" is not defined in the statute, nor do we find a definition in our cases. *Black's Law Dictionary* 848 (rev. 5th ed. 1979) defines "lockout" as "cessation of furnishing of work to employees or withholding work from them in effort to get for employer more desirable terms. . . ." We conclude this is the meaning to be ascribed to the word as used in the statute.

In the instant case, we believe there is substantial evidence to support the Board's decision. Lewis met with the local president on the morning of August 22, and he was told that absent an agreement, there would be a strike that afternoon. They discussed ground rules for the strike, and health insurance coverage for union members during the strike. The statement Lewis read during the 1:00 p.m. meeting with the workers specified that the employer was not staging a lockout. Although the testimony conflicted, there was evidence presented that the gates were not locked, and work was available for members who wanted to work. The workers were advised that there could be repercussions from the union if they crossed the picket line, but they were not denied work.

Appellants argue that we should give greater weight to the decision of the Appeal Tribunal referee who actually conducted the hearing, rather than to the Board, which made its decision based on the written record. We dispose of this argument by simply restating the familiar rule that the credibility of witnesses and the weight to be accorded their testimony are matters to be resolved by the Board of Review. *Grigsby* v. *Everett*, 8 Ark. App. 188, 649 S.W.2d 404 (1983).

Affirmed.

COOPER and CLONINGER, JJ., agree.