James DRAY *v.* DIRECTOR, Employment Security
Department, and City of Bentonville

E 94-171                                    930 S.W.2d 390

Court of Appeals of Arkansas
Division I
Opinion delivered October 2, 1996

*Conrad T. Odom*, for appellant.

*Allan Pruitt*, for appellees.

OLLY NEAL, Judge. Appellant James Dray, a former sergeant of the Bentonville Police Department, takes this appeal from an order affirming the denial of his request for unemployment benefits entered by the Arkansas Board of Review on June 29, 1994. The Board agreed with the Arkansas Appeal Tribunal in its findings that the Appeal Referee presiding at the hearing on appellant's claim correctly found that appellant was discharged for misconduct connected with his employment. We disagree and reverse the Board's decision.

Appellant's alleged work-related misconduct occurred about 2:00 a.m., December 20, 1993, at the Bentonville Police Department. On that date, appellant was notified by one of his fellow officers that appellant's 15-year-old son, Casey, had been arrested on a charge of public intoxication, and would only be released to a parent or legal guardian. When appellant arrived at the police station, his son was very intoxicated, argumentative, and belligerent toward the police officers who arrested him and toward his father. Appellant slapped his son on the face twice in response to the conduct. Appellant was terminated effective January 25, 1994, and on March 2, 1994, was notified by the Arkansas Employment Security Department of his disqualification to receive benefits.

At the hearing before the Appeal Tribunal, appellant testified that prior to his termination he had been employed by the City of Bentonville as a police officer for almost ten years. Mr. Dray stated that when he received the call from the police department concerning his son's arrest, he was off duty on sick leave due to an accident he had in November 1993. Appellant was not in uniform when the incident occurred. According to Mr. Dray, he had no responsibilities that called for contact with juveniles and would not have been at the police station if the juvenile who was arrested had not been his son. Mr. Dray admitted that he struck his son in the face and testified that he did so because his son "smarted off" to him after being admonished for being disrespectful to other officers.

Appellant also presented documentary evidence consisting of his own Employment Security Department Worksheet and State-

ment concerning his discharge, the statement of City of Bentonville's Mayor, John W. Fryer, concerning the discharge and transcripts of interviews with the police officers who witnessed the incident. Appellant's worksheet reflected that appellant had been issued a manual containing rules and regulations of the employer in 1991 and that at the time of the issuance, appellant's supervisor indicated he was not happy with the manual and was only passing them out because everyone "was complaining about no set of rules and regulations." Appellant claimed in his statement that he had never been warned that his type of behavior could result in his termination and that he was not aware of the employer's policy on the subject.

Mayor Fryer, on the other hand, acknowledged in his statement that appellant had never received any warnings concerning his specific behavior, but claimed that appellant was aware of the general policy against striking "handcuffed prisoners" by virtue of his nine and one-half years of employment as a police officer.

A transcription of a December 22, 1993, interview with appellant regarding the slapping incident was also introduced as evidence. During the interview, appellant admitted that he struck his son in the police station, but claimed he wasn't trying to hurt him. Appellant stated that he only slapped the boy hard enough "to get his attention because he was mouthy and cussing." Appellant also stated that the slap did not leave any marks or imprints or bruises. After the incident, appellant immediately took his son home.

Appellant's statement was somewhat corroborated by the testimony of Lieutenant Jerry Williams in a separate interview which occurred on December 21, 1993, the day before appellant was interviewed. Lieutenant Williams stated that Casey Dray was completely uncooperative and "mouthing and carrying on and yelling and screaming" from the time he was picked up until he was confronted by appellant. Williams stated that no bruises or other marks resulted from the slapping and that no serious damage was done.

■ On appeal, we review the findings of fact of the Board of Review in the light most favorable to the prevailing party, only reversing where the findings are not supported by substantial evidence. *Roberson* v. *Director of Labor*, 28 Ark. App. 337, 775 S.W.2d 82 (1989). Substantial evidence is such evidence that a reasonable

mind would find adequate to support a conclusion.

■■ Misconduct has been defined as "more than mere inefficiency" or unsatisfactory judgment; it is "some act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, or a disregard of the standard of behavior the employer has a right to expect of its employees." *Baker* v. *Director of Labor*, 39 Ark. App. 5, 832 S.W.2d 864 (1992); *Feagin* v. *Everett, Director*, 9 Ark. App. 59, 652 S.W.2d 839 (1983); Ark. Code Ann. § 11-10-515(b) (1987). In order for an employer to show that his employee's off-duty activities rise to the level of misconduct in connection with the employment, the employer must show by a preponderance of the evidence:

> [T]hat the employee's conduct (1) had some nexus with her work[,] (2) resulted in some harm to the employer's interest, and (3) was in fact conduct which was (a) violative of some code of behavior impliedly contracted between employer and employee, and (b) done with intent or knowledge that the employer's interest would suffer.

*Feagin, supra,* at 68.

■ In the case at bar, the record is sufficient to support the findings that an implied contract prohibiting certain behavior existed between appellant and his employer. However, no copy of any of the specific rules or regulations is a part of the record. It is, therefore, impossible on appeal to ascertain what the exact prohibitions were and whether appellant was guilty of violating any of them. Also, appellant testified that when he struck his son he was reacting as a parent to the boy's behavior, and didn't think that his conduct would reflect adversely on the department. Appellee offered nothing to refute appellant's contention that he had no intention of harming his employer's interest.

■ The employer also had the burden of showing that some actual harm resulted from appellant's conduct. The only evidence offered in this regard is that some of appellant's subordinate officers and one civilian were present in the same building in which the incident occurred. There is no evidence that the one civilian witnessed the incident or that any of the officers present interpreted the act as having any implications toward their own dealing with prisoners or inmates to whom they had no lawful responsibility by nature of a parent-child relationship.

█ Finally, the Board's decision indicates that its decision was partially based on the fact that "the employer's rules for the use of physical force reasonably extended to the claimant's off-duty activities towards a person in the employer's custody." The record reflects, however, that appellant had been called to the police station for the very purpose of taking his son out of the employer's custody; the son therefore had impliedly been released, and was not in the "employer's custody." This tends to support appellant's contention that he had no intention of adversely affecting the employer's interest.

█ In sum, because appellee failed to prove that appellant possessed the requisite intent when he violated a rule, regulation, or occupational standard of the employer, we cannot say the Board's decision is supported by substantial evidence.

Reversed.

MAYFIELD, J., agrees.

ROGERS, J., concurs in result.