Gerald K. Socash, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 16, 1982, before Judges ROGERS, MACPHAIL and DOYLE, sitting as a panel of three.

*Kenneth P. Walsh,* for petitioner.

*Steven J. Neary,* Associate Counsel, with him *Joel G. Cavicchia,* Associate Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

Opinion by Judge Rogers, November 3, 1982:

Gerald K. Socash appeals from the denial of his claim for unemployment compensation benefits which denial was predicated on a determination by the unemployment compensation authorities that Mr. Socash had been discharged from his position as a truck driver for R.T. Merryman Trucking on account of his disqualifying willful misconduct.

The incident of misconduct alleged by the employer and found by the Unemployment Compensation Board of Review to have been proved by credible competent evidence is described in the Board's finding number two as follows:

> 2. On October 17, 1980, the claimant was traveling at a high rate of speed around the tipple,[1] passed a truck that was going out of the tipple, and nearly collided with the truck.

The single issue raised by the claimant for our review is whether this finding is supported by substantial evidence of record.

At a hearing conducted by an unemployment compensation referee, the claimant and his supervisor testified as to the events of October 17, 1980, as follows:

### Employer's Testimony

Referee: Mr. Merryman, was he discharged from his job?

Supervisor: Yes.

Referee: Why?

Supervisor: Because the coal company we were hauling into called and told me not to send him back on the job, they had to [sic] much problems with him.

---

[1] Nowhere in the record is the term "tipple" defined. Our understanding is that a tipple is a mechanical device which accomplishes the unloading of trucks carrying bulk cargo such as coal.

. . . .

Referee:   Did they tell you why....

Supervisor:   They warned him on several occasions about his speed.

Referee:   They had?

Supervisor:   They did, I did, about his speed around the tipple because they complained to me about it, and they warned him the day I fired him in the morning about driving too fast, and sometime that afternoon, I don't know what time, he passed a truck load going out of the tipple, it was a dirt road, it was dusty, traffic was coming into the tipple and they almost ran into the truck he passed because they couldn't see it because of the dust he created and the coal company called and told me they didn't want him back on the premises again.

Referee:   Is that the only reason you discharged him?

Supervisor:   Yes, sir.

### Claimant's Testimony

Referee:   Tell me what happened on October 17th.

Claimant:   October 17th the first thing in the morning, the weighmaster up there, tipple foreman told me to make sure I stopped before I pulled on the scales. And I did after he told me to stop. But it was quitting time and I went to get a slip out the scale house and I didn't want to be the first one in the shop so I stood there and was talking to the weighmaster a little bit and another guy came in, truck driver, came in and picked up his slip and I thought I ain't going to be first in the garage, so I proceeded to follow him out the road and he proceeded to the front of the scale house and I was

five feet down the road and he pulled out and I pulled out right behind him and he stopped so I pulled off to my right hand side and he cautioned me to go around and I did and my tipple boss was coming in and there was a lot of dust and he said he had to stop. He was quite aways ahead when I passed him. But there was a lot of dust, I do agree there.

Although there is, as one might expect, some conflict in the testimony, that of Mr. Merryman would appear to lend adequate support to the Board's finding. The claimant, however, asserts that Mr. Merryman's testimony is entirely hearsay and, therefore, unavailable to lend such support.

We must first note that there is nothing on the face of the employer's testimony which reveals it to be based on out-of-court declarations of another rather than direct impressions. We might assume that because Mr. Merryman testified that he received a telephone call that day from his customer that he was not on the scene to view the claimant's passage in the vicinity of the tipple. However, in the absence of an objection to the testimony or cross-examination of this witness, other assumptions are equally possible and the process of assuming and inferring has been committed to the Board and not to this Court.

Fortunately, our decision need not turn on this point alone since even hearsay testimony is sufficient to support a finding of the Board if it is not objected to and is corroborated by other competent evidence. *Walker v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976). The claimant argues that the record contains no such corroborating evidence but, in our view, this argument reflects a misapprehension of the nature of corroborating evidence and the claimant's testimony furnishes ample corroboration of the employer's testimony.

In *Shoemaker v. Shoemaker*, 199 Pa. Superior Ct. 61, 184 A.2d 282 (1962) Judge WOODSIDE, writing for the Court en banc, had occasion to describe the nature of evidence sufficient to corroborate a confession of adultery, which confession was insufficient without such corroboration to justify a sentence of divorce.

> Of course, it is not necessary to prove the adultery independent of the confession, for then the finding of adultery would stand not on the confession but upon those independent circumstances. Evidence far short of proving adultery is sufficient to corroborate the confession.... The confession is corroborated when there is evidence which adds weight or credibility to the confession by establishing additional and confirming facts. To corroborate means to strengthen, to make more certain, to add weight or credibility.

*Id.* at 67, 184 A.2d at 285. The Superior Court then held that evidence that the defendant wife and her purported paramour had been in Washington, D.C. on a particular day sufficiently corroborated her confession of having committed adultery on that day in that city and that evidence that the defendant had been, together with her lover, alone in her house until midnight on a particular night sufficiently corroborated her confession of having committed adultery earlier that evening.

Similarly in the instant case it is unnecessary that the finding of willful misconduct be supported by substantial evidence absent the hearsay; if it were, the *Walker* rule would be without effect. All that is necessary is that facts adding weight or confirming the hearsay be established by competent evidence.

The claimant's account of the events at issue shows that he was driving a truck on the road in question at the time of the alleged speeding incident, that he was

then observed by a supervisory employee, that the claimant engaged in maneuvers intended to accomplish his arrival at a garage first and before another driver, and that the maneuvers created dusty conditions on the road. These circumstances lend weight and credibility to the employer's hearsay account of speeding; the factfinder was not required to believe the claimant's additional self-serving statements that he had not driven at an unsafe rate of speed.

The testimony of the employer, if hearsay, was sufficiently corroborated by the claimant's admissions. The disputed finding is supported by substantial evidence.

Order affirmed.

### ORDER

AND NOW, this 3rd day of November, 1982, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.