# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pamela McDaniels,                 :
             Petitioner      :
                               :
        v.              :   No. 551 C.D. 2019
                               :   Argued:  June 8, 2020
Unemployment Compensation   :
Board of Review,            :
             Respondent   :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED:  July 9, 2020**

     Pamela McDaniels (Claimant) petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board), in which the Board affirmed a decision of the UC Referee (Referee), denying Claimant UC benefits pursuant to Section 402(b) of the UC Law (Law),[1] relating to voluntary separation from employment without cause of a necessitous and compelling nature and concluding Claimant received a non-fault overpayment in the amount of $9367.  On appeal, Claimant argues there is not substantial evidence to support the Board's finding that she voluntarily quit her employment.  Under the unique facts of this case, we agree, and accordingly reverse the Board's Order.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937), 2897, *as amended*, 43 P.S. § 802(b).

## I.   BACKGROUND

Claimant worked for Independent Home Care (Employer) as a caregiver for her sister, who was the sole patient for whom she was assigned to care.[2]  After her sister died on April 10, 2017, Claimant contacted Employer to advise of her sister's death.  Thereafter, on April 19, 2017, Claimant applied for UC benefits, which she received without issue for a considerable time.  Nearly a year and a half later, Employer sent a Request for Relief from Charges to the Bureau of UC Benefits and Allowances, Employers' Charge Section, alleging that Claimant "no longer wanted to work" after her sister died.  (Certified Record (C.R.) Item 2 at 2.)  When asked whether Claimant retired, Employer checked "no" and wrote "Voluntary Quit signed and available upon request."  (*Id.*)  Subsequently, the Local Service Center sent Claimant and Employer letters and questionnaires seeking additional information related to Claimant's separation from employment. (C.R. Items 3 & 4.)  Neither party responded.

On November 19, 2018, the Local Service Center issued a Notice of Determination finding Claimant ineligible for benefits under Section 402(b) beginning with the claim week ending July 1, 2017, which the Local Service Center stated was Claimant's last day of work for Employer.[3]  (C.R. Item No. 6.)  On the same date, the Local Service Center also mailed Claimant a second Notice of Determination stating Claimant was liable for a fault overpayment for the benefits she received because she voluntarily quit her job.  (*Id.*)

---

[2] Claimant's Claim Record also shows SecTek Incorporated as a separating employer.  Her separation from SecTek is not at issue in this appeal.

[3] It is not clear how the Service Center arrived at this date.

Claimant timely appealed, and a notice of hearing was issued listing multiple issues to be addressed, including whether Claimant voluntarily quit or was discharged and whether Claimant received a non-fault overpayment. (C.R. Item 9.)

Employer did not appear at the hearing despite being notified about the date, time, and place. Employer's Relief from Charges, which alleged Claimant quit, was admitted at the hearing as a Service Center exhibit without objection by Claimant.

Claimant, appearing pro se, testified as follows. Claimant began working for Employer after the Philadelphia Corporation for Aging arranged for her to take care of her sister through Employer. (Hr'g Tr. at 7.) Claimant never worked as a caretaker before and only provided services for Employer because the patient was her sister. (*Id.* at 8.) When her sister died on April 10, 2017, Claimant contacted Employer's clerical staff, as she did not have a supervisor and this was normally whom she turned in her time, to advise of her sister's death, and they offered her "their sincerest condolences." (*Id.*) Claimant denied telling Employer that she quit. Specifically, when asked that question by the Referee, Claimant responded "I didn't state that I quit or continued. She was dead. I don't know -- I don't know (inaudible)." (*Id.* at 5.)

Claimant admitted that she did not contact Employer to ask for a new patient or any additional work. (*Id.* at 5-6.) She testified that, as per her belief, she had to bring in her own client and that she was no longer employed by Employer because she was only hired as a caregiver for one client, her sister, who died. (*Id.*) According to Claimant, Employer never informed Claimant that additional assignments were available or contacted her regarding additional work after her sister died. (*Id.*) Claimant testified that she did not think continuing work with Employer was an option:

3

R[eferee]:  Did you intend to continue providing services for the Employer after your sister passed?

C[laimant]:  I will say that after my sister -- before that happened, I might have continued.  But the death of my sister -- I didn't even know that that was an option.  Let's put it that -- if I answered honestly, I didn't even know that was an option.  That's the honest answer.  I didn't know that was an option.  I just thought that you come there -- because all the commercials, everything, say[] bring your client and we can offer you X amount of hours.  Every commercial that they have for caregiving states (inaudible).  Whatever commercial says bring your client.  You could care for your loved one or a friend or a family member.  Bring them to us, and you can -- we will pay you.  I didn't have anybody else to bring.  Nobody else is ill in my family.

(*Id.* at 8.)

Claimant also testified that the reason she gave for her separation in her application for UC Benefits was that her "client had died." (*Id.* at 6.)  Upon further questioning by the Referee, Claimant testified that she believed she was terminated from Employer.  (*Id.*)  When asked why she represented she was terminated, Claimant replied, "[a]nd April 10th, I was -- the job was over." (*Id.*)  Claimant further testified that she did not "know what terminology you would actually use for" explaining her separation from Employer.  When the Referee advised she was not seeking a legal determination but what Claimant listed on her application for benefits, Claimant told the Referee she did not recall.  (*Id.*)

Based upon the evidence, the Referee issued a Decision concluding that Claimant was ineligible for UC benefits under Section 402(b) of the Law, but modified the Service Center's determination from fault to non-fault overpayment under Section 804(a) of the Law, 43 P.S. § 874(a).  The Referee found as follows:

1. [] Claimant was employed full-time as a caregiver with Independent Home Care Inc. . . . and last worked on April 10, 2017.

2. [] Claimant was assigned to care for a single patient that was the Employer's client.

3. On April 10, 2017, [] Claimant informed [] Employer that the client had died.

4. [] Claimant did not contact [] Employer for assignment to a new patient.

5. On May 10, 2017, [] Claimant voluntarily separated from her employment.

(Finding of Fact (FOF) ¶¶ 1-5.)

The Referee explained that "[b]ased on the testimony of [] Claimant and the competent evidence in the record, the Referee finds that [] Claimant stopped attending work and did not make a reasonable effort to maintain the employment." (Referee's Decision at 3.) The Referee further stated that "Claimant left the employment[] and intended to quit the employment as her patient had died." (*Id.*) Because there was no competent record evidence to support a finding that Claimant voluntarily quit for a necessitous and compelling reason, the Referee concluded Claimant had not met her burden. (*Id.*)

Claimant appealed to the Board, which affirmed. In doing so, the Board adopted and incorporated the Referee's findings and conclusions. (Board Order.) Claimant now petitions this Court for review of that Order.

## II.    PARTIES' ARGUMENTS

On appeal,[4] Claimant argues the Board lacked substantial evidence to find that Claimant voluntarily quit her employment. Specifically, Claimant argues there is no

---

[4] The appellate court's review of a decision of the Board is limited to determining whether constitutional rights have been violated, whether errors of law were committed, or whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency

competent evidence of record that she had the requisite conscious intent to voluntarily quit her employment. Instead she argues that she reasonably believed her employment ended when her sister died and Claimant separated from Employer for lack of work because "it was her belief that assignment to a new patient was not an option." (Claimant's Brief (Br.) at 13-14.) For support, she cites her testimony that she thought she needed to bring her own client and notes that she never worked as a caregiver before her sister's illness. According to Claimant, the only evidence of record demonstrating an intent to quit is Employer's Relief from Charges, which is "uncorroborated hearsay [that] cannot support a finding of fact." (*Id.* at 11.) Claimant also argues that the Board's conclusion that Claimant quit her job is based on an assumption that Employer had procedures in place for Claimant to continue employment but that she did not take advantage of them. However, Claimant asserts, there is no evidence of this as Employer did not appear at the hearing.

The Board responds that its findings are supported by substantial and competent evidence as Claimant testified that after she notified Employer that her client had died, she did not request additional work, she did not clear up any confusion about continuing work, and she did not attempt to preserve her employment. (Board's Br. at 5.) The Board argues that "voluntary termination . . . can be inferred from the employee's conduct." (*Id.* at 7 (citing *Wise v. Unemployment Comp. Bd. of Review*, 111 A.3d 1256, 1263 (Pa. Cmwlth. 2015)).) In other words, according to the Board, Claimant's failure to request additional work demonstrated that she no longer wished to continue working. The Board also argues

---

Law, 2 Pa.C.S. § 704. "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Pittsburgh, Dep't of Pub. Safety v. Unemployment Comp. Bd. of Review*, 927 A.2d 675, 676 n.1 (Pa. Cmwlth. 2007) (quotation marks omitted).

that it appropriately considered whether Claimant's voluntary separation was for cause of a necessitous and compelling nature because it was the only issue on which the Service Center and Referee ruled. Because Claimant never raised the issue that her separation was due to being discharged, the Board asserts Claimant waived the issue.

The Board also addresses Claimant's argument that Employer's statement regarding her no longer wanting to work after her family member died is uncorroborated hearsay. The Board argues that "a statement that is ostensibly hearsay may support a finding of fact if . . . there is other competent evidence that lends it weight and credibility." (*Id.* at 8 n.6 (citing *Socash v. Unemployment Comp. Bd. of Review*, 451 A.2d 1051 (Pa. Cmwlth. 1982).) The Board points to Claimant's testimony that "before that happened," referring to her sister's death, "I might have continued [to work]" and Claimant's failure to request other work as evidence that corroborates Employer's assertion that she no longer wanted to work after her client passed away. (Board Br. at 8-9 (quoting Hr'g Tr. at 8).)

In a reply brief, Claimant responds that the Board assumes that a claimant's employment can only end if claimant quits or has been discharged. According to Claimant, the Board misunderstands her argument when it interprets Claimant as arguing that she did not quit and, therefore, she must have been fired. Additionally, Claimant reiterates that there is no competent evidence to show that Employer had continuing work that was available to her. Claimant also contends that her testimony does not corroborate the hearsay statement in Employer's Relief from Charges because the Board failed to consider the context of the statement, which was that after the death of her sister, "[Claimant] didn't even know [continuing to work] was an option." (Claimant's Reply Brief at 3 (citing Hr'g Tr. at 8).) Claimant also argues

7

that the Board's disregard of Claimant's uncontested testimony was not based on credibility because the Board did not consider her subjective belief that she needed to bring in her own clients in order to continue working for Employer. Claimant asserts that whether a claimant voluntarily quits is a legal question; thus, the Court is not bound by what is labeled finding of fact no. 5. Accordingly, she asks the Court to reverse the Board's Order.

## III.    DISCUSSION

### A.    Waiver

We begin by addressing the Board's waiver argument related to the reason for Claimant's separation from employment. A party waives review of an issue by failing to raise it before the Referee when it had an opportunity to do so. *Dehus v. Unemployment Comp. Bd. of Review*, 545 A.2d 434, 436 (Pa. Cmwlth. 1988). In this case, Claimant's appeal to the Board stated, "I[,] Pamela McDaniels[,] am appealing this decision 1/22/19." (C.R. Item 12 at 4.) While this statement does not clearly delineate the basis for her challenge, given that Claimant was appealing a determination that she voluntarily quit, it is clear that she is arguing that she did not voluntarily quit.

Moreover, contrary to the Board's assertion, Claimant is not challenging her separation from Employer on the basis she was discharged for willful misconduct. Rather, Claimant is arguing, as she did before the Referee, that her employment with Employer came to an end because the patient for whom she provided care died and she did not believe continuing work was an option. In short, there was a lack of work. Therefore, the Court agrees that the issue is fairly encompassed by Claimant's appeal to the Board.

8

### B. Voluntary Quit

#### 1. *Express Intent to Quit*

We next address whether there is substantial evidence of record to support the Board's finding that Claimant expressed an intent to voluntarily quit. Claimant argues that the only evidence of record that indicated that Claimant did not intend to continue working for Employer is uncorroborated hearsay, namely, Employer's Request for Relief from Charges, wherein Employer represented Claimant "used to work for a family member but once the family member passed away, she **no longer wanted to work**." (C.R. Item 2 at 2 (emphasis added).) Pursuant to *Walker v. Unemployment Compensation Board of Review*, "[h]earsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding of the Board, [if] it is corroborated by any competent evidence in the record, but a finding of fact based [s]olely on hearsay will not stand." 367 A.2d 366, 370 (Pa. Cmwlth. 1976). In this case, Claimant did not object to Employer's Request for Relief from Charges, which contained the hearsay statement at issue. (Hr'g Tr. at 3.) Thus, it is clear that *Walker* applies. Therefore, under *Walker*, the statement contained within Employer's Request for Relief from Charges must be corroborated by other competent evidence of record to support a finding that Claimant voluntarily left employment where continuing work was available.

Our decision in *Neiman v. Unemployment Compensation Board of Review*, 527 A.2d 201, 202 (Pa. Cmwlth 1987), is instructive. There, the claimant was employed as a security guard and was discharged after reporting to work over one hour late to a scheduled training session. The record showed that the claimant had a history of absences and tardiness. The Office of Employment Security (OES) denied benefits on the basis that the claimant engaged in willful misconduct,

specifically, tardiness and missing work. *Id.* at 203. The referee affirmed the OES decision to deny the claimant benefits but on different grounds. The referee concluded that the claimant was discharged because he did not attend the training session as he was directly ordered to do. *Id.* On appeal, the Board affirmed the referee's decision. Upon further appeal, this Court held that the evidence relied on by the referee was hearsay that was uncorroborated by any other evidence in the record. *Id.* Specifically, we noted that the employer had attempted to introduce evidence of the work directive given by the claimant's supervisor, but the claimant objected on the basis of hearsay, which the referee sustained. Although the referee sustained the hearsay objection, the referee still relied upon the hearsay evidence to find that the claimant violated his superior's order. *Id.* We held, in relevant part, that the witnesses who testified as to the alleged order by the claimant's superior lacked firsthand knowledge of the statement, and therefore, their testimony was hearsay. *Id.* Although the referee properly excluded this evidence, the referee subsequently considered the evidence based upon the referee's belief that the claimant's cross-examination of the witness elicited the same testimony. *Id.* Regardless, we held the testimony was uncorroborated hearsay, which was insufficient to support any factual findings. *Id.*

Similarly, in this case, the issue here is whether Employer's statement in its Request for Relief from Charges that Claimant "used to work for a family member but once the family member passed away, she **no longer wanted to work**" is uncorroborated hearsay. (C.R. Item 2 at 2 (emphasis added).) The Board argues that Claimant's testimony corroborates this statement because Claimant testified that she "might have continued." (Board Br. at 8 (citing Hr'g Tr. at 8).) However, the Board's argument does not take into consideration the context of the statement,

10

which when viewed as a whole, shows that Claimant did not believe continuing work was an option. When the Referee asked Claimant if she intended to continue providing services for Employer after Claimant's sister died, Claimant responded:

> I will say that after my sister -- before that happened, **I might have continued**. But the death of my sister -- I didn't even know that that was an option. Let's put it that -- if I answered honestly, I didn't even know that was an option. That's the honest answer. I didn't know that was an option.

(Hr'g Tr. at 8 (emphasis added).)

Contrary to the Board's arguments, there is no competent evidence of record that Claimant no longer wanted to work and so intended to voluntarily quit a job where continuing work was available. Employer did not appear at the hearing; as a result, there is no testimony to support its claim that Claimant no longer wanted to work and that there was continuing work available. The Board, therefore, could not credit the statement made in Employer's Relief from Charges, which was hearsay, in the absence of corroborating evidence. The only competent evidence of record is that Claimant believed her employment came to an end when her sister died because Claimant no longer had a client.

As Claimant notes, the facts at issue here are distinguishable from *Thiessen v. Unemployment Compensation Board of Review*, 178 A.3d 255 (Pa. Cmwlth. 2018), and *Iaconelli v. Unemployment Compensation Board of Review*, 892 A.2d 894 (Pa. Cmwlth. 2006). In *Thiessen*, the claimant worked for the employer, which was a temporary staffing agency. When the claimant started with the employer, he executed an agreement requiring him to contact the employer at the end of an assignment and everyday thereafter to inquire of additional work. *Thiessen*, 178 A.3d at 257. The agreement further provided that if the claimant failed to contact the employer within 48 hours of an assignment ending, the employer would consider

the claimant to have voluntarily quit. *Id.* The employer subsequently contacted the claimant and advised him that the place where he was providing services no longer needed him. *Id.* at 258. The employer did not offer the claimant other work at this time. *Id.* The claimant later applied for UC benefits and was determined not ineligible. *Id.* The employer appealed and, at a hearing before the referee, presented evidence of the agreement and testimony that the claimant did not maintain contact, as required. *Id.* Based upon this evidence, the referee determined the claimant voluntarily quit without cause of a necessitous and compelling reason. *Id.* Upon further appeal, the Board affirmed. One of the issues the claimant raised before this Court was whether he voluntarily quit. We concluded he did. *Id.* at 261. Unlike *Thiessen*, here, there is no evidence of any agreement between Employer and Claimant requiring Claimant to maintain contact with Employer. Nor is there competent evidence that there was a policy in place that required Claimant to inquire about continuing work when the one patient to whom Claimant provided care, her sister, died. Therefore, we agree with Claimant that the Board's finding that Claimant quit her job is not supported by competent, substantial evidence but is based on an assumption that Employer had procedures in place for her to continue employment, to which Claimant did not avail herself.

Nor is this case similar to *Iaconelli*. There, the claimant abruptly left work mid-shift and did not return after becoming upset that her employer removed a signature stamp from her desk. *Iaconelli*, 892 A.2d at 895. The claimant thought the employer was accusing her of theft and did not attempt to return to work or contact the employer after leaving. The referee and Board determined the claimant voluntarily quit and, therefore, was ineligible for benefits, and we affirmed. Here,

12

again, the only competent evidence of record is Claimant's testimony that her work came to an end because her client died.

Thus, unlike *Thiessen* and *Iaconelli*, where claimants failed to maintain contact as required or abruptly left the workplace mid-shift, here Claimant believed that she was no longer employed due to a lack of work caused by her sister's death.

### 2.     *Implied Intent to Quit*

Having concluded there is no competent evidence to support the Board's finding that Claimant expressed an intent to voluntarily leave work, we next examine whether there is evidence from which Claimant's intent could be inferred. Whether a claimant's separation from employment is the result of a voluntary resignation is a question of law subject to the appellate court's review and must be determined by the facts of the individual case. *Procyson v. Unemployment Comp. Bd. of Review*, 4 A.3d 1124, 1128 (Pa. Cmwlth. 2010). The resolution of such an issue requires a determination of the intent of the claimant. *Id.* A voluntary quit requires a finding that a claimant had a conscious intention to leave employment. *Fekos Enters. v. Unemployment Comp. Bd. of Review*, 776 A.2d 1018, 1021 (Pa. Cmwlth. 2001). In all cases, the totality of the circumstances surrounding the incident must be considered when determining the intent to quit. *See, e.g.*, *Phila. Parent Child Ctr., Inc. v. Unemployment Comp. Bd. of Review*, 403 A.2d 1362, 1363 (Pa. Cmwlth. 1979).

In *Roberts v. Unemployment Compensation Board of Review*, 432 A.2d 646 (Pa. Cmwlth. 1981), the claimant was employed as a Licensed Practical Nurse (LPN). While on vacation, the claimant's employer sent him a letter, on pink paper, that stated, "it has been determined that you are not capable of passing medicines

safely and in the best interest of patient care, you will no longer function at [the employer] under the job description of a [LPN] as of June 6, 1979." *Id.* at 647. The claimant did not return to work after his vacation ended because he believed he had been discharged. His employer informed him several days later that it considered his separation as a voluntary quit when he did not return to work after his vacation ended. The Board found the claimant ineligible on that basis. We reversed, concluding the "element of intent [wa]s absent." *Id.* at 648. The Court found that the claimant reasonably believed he had been discharged and, thus, did not have a conscious intention to quit based upon the claimant's testimony, the letter on pink paper, which was connotative of a termination notice, and the letter's content. *Id.*

We have also found substantial evidence that a claimant expressed an intent to voluntarily quit in *Saunders v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1395 C.D. 2014, filed May 29, 2015).[5] The claimant in that case worked as a live-in caregiver. *Id.*, slip op. at 2. Despite being scheduled to stay with her client over the holidays, the claimant informed the employer that the employer had to find a replacement for her as she had plans to spend time with her family over the holidays. *Id.* The claimant expressed that she was leaving regardless of whether the employer was able to find a replacement. *Id.* When the claimant contacted the employer following the holidays, it advised her that "she was no longer on the schedule because she had resigned." *Id.* The claimant applied for UC benefits stating that her reason for separating for her employment was due to lack of work. *Id.* The Local Service Center issued two notices of determination, finding the

---

[5] Unreported panel decisions of this Court may be cited for their persuasive value in accordance with Rule 126(b)(1) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b)(1), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

14

claimant was ineligible under Section 402(b) and assessing a fault overpayment. The referee and Board affirmed those determinations. On appeal, the Court found that the claimant indicated her "intention to bypass the schedule" when she told the employer she was leaving regardless of whether the employer found a replacement for her. *Id.*, slip op. at 4. The Court found that the claimant's conscious intent to abandon her client and her employment was substantial evidence to demonstrate that the claimant voluntarily quit. *Id.*, slip op. at 5-6.

This case is more akin to *Roberts* than *Saunders*. Like *Roberts*, where the claimant reasonably believed that he was discharged based on the letter he received on pink paper from the employer, Claimant here reasonably believed that when the sole client for whom she provided care, her sister, died, her job had concluded. There is no competent evidence of record to suggest otherwise. Similar to the absence of intent to quit in *Roberts*, in this case there is no evidence in the record to prove that Claimant possessed a conscious intent to voluntarily quit. Further, unlike *Saunders*, here, the totality of the circumstances do not support the Board's conclusion that Claimant voluntarily terminated her employment. Claimant testified that she believed she had been hired for the purpose of caring for her sister whom she brought to Employer as a client. (Hr'g Tr. at 5.) Although she did not seek additional work from Employer after her sister's passing, Claimant testified she did not know continuing employment was an option. (*Id.*) Unlike *Saunders*, where the claimant was certified as a caregiver and was assigned to clients to which she had no relation, here, Claimant's employment was personal as she was not certified in home care but rather worked for Employer for the purpose of caring for her ill sister. Claimant only began working for Employer because Philadelphia Corporation for Aging set up the relationship for the purpose of Claimant being able to care for her sister.

15

Moreover, Employer had the opportunity to contact Claimant to offer more work; however, there was no further communication and, as discussed above, also no proof to support that Employer had additional work available for her. Thus, there is no substantial evidence in the record to lead a reasonable person to believe that Claimant had a conscious intention to voluntarily quit. Accordingly, the Board's Order must be reversed.

## IV. CONCLUSION

Under this set of facts, where a claimant started work for an employer after an outside agency set it up for the claimant to care for a loved one; the loved one was the only client with whom the claimant worked; the claimant had never worked in this capacity before; there is no competent evidence as to the terms of the employment relationship; the claimant testified that she did not believe continuing work was available after the loved one died; and the only evidence that suggests there was continuing work was an uncorroborated hearsay statement made in a document submitted by the employer who did not appear at the hearing, we find that there must be some showing of the availability of continuing work from which Claimant consciously intended to voluntarily quit. Because that is absent here, we would not find that Claimant voluntarily quit her employment. Based upon the foregoing, we reverse the Board's Order.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pamela McDaniels,              :
              Petitioner      :
                             :
        v.                 :    No. 551 C.D. 2019
                             :
Unemployment Compensation     :
Board of Review,               :
             Respondent    :

## O R D E R

**NOW**, July 9, 2020, the Order of the Unemployment Compensation Board of Review entered in the above-captioned matter is **REVERSED.**

 

                           _____
                           **RENÉE COHN JUBELIRER,** Judge