IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Twanda Pierce-Boyce,            :
                                     :
                 Petitioner   :
                                     :
          v.                :  No. 725 C.D. 2021
                                     :  Submitted:  August 19, 2022
Unemployment Compensation  :
Board of Review,            :
                                     :
              Respondent :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE STACY WALLACE, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                         FILED:  November 16, 2022

Twanda Pierce-Boyce (Claimant) petitions for review from an order of the Unemployment Compensation Board of Review (Board) that reversed the decision of a referee and denied her unemployment compensation (UC) benefits under Section 402(e) of the Unemployment Compensation (Law).[1]  Claimant contends Employer failed to establish Claimant's conduct violated a known work policy.  Additionally, Claimant asserts that the Board's determination is not supported by substantial evidence.  Upon review, we affirm.

---

[1] Act of December 5, 1926, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).  Section 402(e) of the Law provides, "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to [her] discharge . . . from work for willful misconduct connected with his work . . . ."

Claimant worked as a full-time therapist for Resources for Human Development (Employer) from July 15, 2019, until her last day of work on August 26, 2020. After her separation from employment, Claimant applied for UC benefits, which a local service center denied. Claimant appealed, and a referee held a hearing. At the hearing, the referee heard testimony and received evidence from Claimant, who proceeded *pro se*; Employer's Tax Consultant Representative, Joel Kincaid; and Employer's Witness, Sharon Kopyc (Director).

Based on the testimony and evidence presented, the referee determined that Employer did not meet its burden of proving that Claimant committed willful misconduct. Thus, the referee concluded that Claimant was eligible for UC benefits. Employer appealed to the Board.

Based on the record created at the referee's hearing, the Board found the following facts. Employer maintains an employee policy that provides for dismissal of an employee on the grounds of either neglect of the individuals served by Employer, or a violation of safety standards that may endanger another person. Claimant was aware of Employer's policy. On August 21, 2020, Claimant was asked to transport a resident to a halfway house in Altoona from Employer's Philadelphia location. Claimant drove exceedingly fast during her trip, averaging a trip speed of 86 miles per hour and a peak speed of 96 miles per hour. Employer discharged Claimant for violating its safety rules. Board's April 19, 2021 Opinion (Board Op., 4/19/21), Findings of Fact (F.F.) Nos. 1-5.

Although Claimant testified that she was driving with the flow of traffic, the Board did not find this testimony credible. Board Op. at 2. Claimant acknowledged that the speed limit was no more than 65 to 70 miles per hour. *Id.* Considering Claimant's average speed of 86 miles per hour, the Board concluded

2

that Claimant's claims of traveling with the flow of traffic was neither reasonable nor justified under the circumstances. *Id.*

The Board also noted that Claimant made several admissions of her infractions throughout the record. Board Op. at 2.; *see* Certified Record (C.R.) at 91. For example, on her internet initial claims form, Claimant "disclosed that she was discharged for driving 'too fast,' answered 'yes' to whether she violated [] [E]mployer's rule, and that it was 'reported through GPS that I was driving too fast.'" *Id.*; *see* C.R. at 16, 19. When asked at the hearing if she contested the report, Claimant "conceded to its accuracy, stating, 'I don't know about the GPS. I wasn't aware of the GPS but if that's what they are recording, I'm not going to battle that because I don't know.'" Board Op. at 2; *see* C.R. at 91.

As for the GPS report, the Board concluded that the GPS report, which the referee did not admit into evidence,[2] did not constitute an assertion prohibited under the rule against hearsay. C.R. at 91. The Board opined administrative agencies are not bound by the "best evidence rule," which would require Employer to introduce a physical copy of the GPS report. *Id.* The Board determined Claimant sufficiently conceded and corroborated the assertions of her excessive speed. *Id.* at 92.

Based on the evidence as corroborated by Claimant's admissions, the Board concluded that Employer met its burden of proving that Claimant deliberately violated Employer's policies. C.R. at 92. Thus, the Board reversed the referee's determination upon concluding that Claimant was ineligible for benefits under

---

[2] The referee did not admit into the record a report from AZUGA Fleet. The referee noted in his decision that Employer submitted the document one day before the hearing.

Section 402(e) of the Law.[3]  Claimant's petition for review to this Court followed.[4]  *Id.*

On appeal, Claimant contends that Employer failed to establish the existence and violation of a known work policy.  Claimant contests she was never made aware of the safety policies in question.  She contends her conduct did not rise to the level of disqualifying willful misconduct.  Claimant avers the Board's findings are not supported by substantial evidence because Employer failed to provide any non-hearsay evidence that she violated its policy.

"[W]illful misconduct is defined by the courts as: (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations."  *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006, 1009 (Pa. Cmwlth. 2014), (citing *Grieb v. Unemployment Compensation Board of Review*, 827 A.2d 422, 425 (Pa. 2002)).

The employer bears the initial burden of proving that a claimant engaged in willful misconduct.  *Johns*, 87 A.3d at 1009.  A determination of whether an employee's actions amount to willful misconduct requires a consideration of "all of the circumstances, including the reasons for the employee's noncompliance with the employer's policy or directives."  *Navickas v. Unemployment Compensation*

---

[3] The Board denied Claimant's request for reconsideration of its decision.  C.R. at 96, 99.

[4] Our review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated.  Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Johns v. Unemployment Compensation Board of Review*, 87 A.3d 1006 (Pa. Cmwlth. 2014).

4

*Board of Review*, 787 A.2d 284, 288 (Pa. 2001) (quoting *Rebel v. Unemployment Compensation Board of Review*, 723 A.2d 156, 158 (Pa. 1998)). "Whether a claimant's actions constitute willful misconduct is a question of law fully reviewable on appeal." *Johns*, 87 A.3d at 1010.

Once an employer meets its burden of proving willful misconduct, the burden shifts to the employee to prove good cause for her actions. *Johns*, 87 A.3d at 1010. An employee establishes good cause where her actions are justified or reasonable under the circumstances. *Docherty v. Unemployment Compensation Board of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006).

Further, in UC cases, the Board is the ultimate fact-finder and is empowered to resolve all issues of witness credibility, conflicting evidence, and evidentiary weight. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d at 338, 342 (Pa. Cmwlth. 2008). It is irrelevant whether the record contains evidence that would support findings other than those made by the Board; the proper inquiry is whether the evidence supports the findings actually made. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Additionally, the party prevailing below is entitled to the benefit of all reasonable inferences drawn from the evidence. *Id.* This Court is bound by the Board's findings of fact "so long as the record taken as a whole contains substantial evidence to support them." *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 718 (Pa. Cmwlth. 2013).

When asserting that a discharge was based on a violation of a work rule, an employer must establish the existence of the rule, the reasonableness of the rule, the claimant's knowledge of the rule, and its violation. *Henderson*, 77 A.3d at 718

5

(citing *Ductmate*, 949 A.2d at 344). An employee who has no notice of a work rule will not be denied benefits based on willful misconduct. *Tongel v. Unemployment Compensation Board of Review*, 501 A.2d 716 (Pa. Cmwlth. 1985). Moreover, "an employee is charged with constructive notice of [a] rule or policy [if] it could have been discovered by due diligence." *Gibson v. Unemployment Compensation Board of Review*, 760 A.2d 492, 495 (Pa. Cmwlth. 2000).

A work rule violation need not be shown where the behavior standard is obvious, and the employee's conduct is so inimical to the employer's best interests that discharge is a natural result. *Spare v. Unemployment Compensation Board of Review*, 432 A.2d 283 (Pa. Cmwlth. 1981). It is well-settled law that "a disregard of the standard of behavior which the employer had a right to expect of [an employee], . . . [can be] willful misconduct, apart from whether or not . . . that [employee violated work rules . . . ." *Lee v. Temple University (Personnel)*, 363 A.2d 890, 892 (Pa. Cmwlth. 1976). "It is not necessary to have an employer's rule where the act itself is contrary to the motor vehicle laws of the Commonwealth." *Cadden v. Unemployment Compensation Board of Review*, 169 A.2d 334, 335 (Pa. Super. 1961) (the claimant's speeding "constituted . . . a willful disregard of the employer's interests and of the standards of behavior which the employer has a right to expect of its employees").

Here, the Board found that Employer maintains a policy that provides for dismissal of an employee on the grounds of either neglect of the individuals served by Employer or a violation of safety standards that may endanger another person. F.F. No. 2. Although Employer did not produce a copy of the policy manual, Employer quoted provisions of its manual on the Progressive Disciplinary Action Form and Employer Questionnaire to establish the existence of its work rules. C.R.

at 23-31. Section 1102.3 of Employer's policy manual forbids "neglect of an individual [Employer] serve[s]." C.R. at 26. Section 1102.4 of Employer's policy manual provides for immediate dismissal for a "violation of safety [sic] and negligent/unsafe behaviors that may endanger another person, destruction of property and equipment." *Id.* Employer's Director testified that Claimant should have been aware of the policies because they are made available to all employees online. C.R. at 71.; Notes of Testimony, Referee's January 5, 2021 hearing (N.T.) at 11. When asked why a verbal warning was not given before termination, Director testified that "excessive speed" is grounds for "immediate termination as [] indicated in the policy manual." *Id.* at 12.

Although Claimant denied awareness of Employer's work rules, she acknowledged the policies were available online; she testified she "did some driving for training"; and she was aware that the maximum speed limit on her trip was 70 miles per hour.[5] *See* N.T. at 14; Petitioner's Brief at 6. Upon review, substantial evidence supports the Board's finding that Employer maintains policies providing for termination if an employee either neglects a person in the care of the employer or violates safety standards that may put another person at risk and that Claimant was aware or should have been aware of Employer's policies.[6]

Next, Claimant argues that substantial evidence does not support the Board's finding that she violated Employer's policies or otherwise committed willful

---

[5] *See* Section 3362 of Vehicle Code, 75 Pa. C.S. §3362 (maximum speed limit in the Commonwealth is 70 miles per hour).

[6] The reasonableness of these policies is manifest. *See, e.g.*, *Webb v. Unemployment Compensation Board of Review*, 670 A.2d 1212, 1215 (Pa. Cmwlth. 1996) (in determining whether an employer's policy is reasonable, we "must consider whether application of the rule or policy under the circumstances is fair and just and appropriate to accomplish a legitimate interest of the employer").

misconduct. Claimant contends that the testimony of Employer's Director constitutes hearsay and is therefore incapable of supporting the Board's findings of fact without corroborating evidence.

Hearsay is "an out of court [statement] offered to prove the truth of the fact asserted [in the statement]." *Commonwealth v. Coleman*, 326 A.2d 387, 388 (Pa. 1974). However, testimony based on an individual's personal knowledge and observations is not hearsay. *See Baird v. Unemployment Compensation Board of Review*, 372 A.2d 1254, 1257 (Pa. Cmwlth. 1977). Moreover, a hearsay statement that is not objected to is still competent evidence and may form the basis for a finding of fact if it is corroborated by other competent evidence. *Remaly v. Unemployment Compensation Board of Review*, 423 A.2d 814, 816 (Pa. Cmwlth. 1980). "[I]t is unnecessary that the finding of willful misconduct be supported by substantial evidence absent the hearsay. . . . All that is necessary is that the facts adding weight or confirming the hearsay be established by competent evidence." *Socash v. Unemployment Compensation Board of Review*, 451 A.2d 1051, 1053 (Pa. Cmwlth. 1982).

In *Socash*, a claimant was discharged from his position as a truck driver for speeding. In support, the employer offered the testimony of its supervisor. The supervisor testified that he received a phone call from his customer directing him not to send the claimant back to the jobsite because the claimant was speeding and almost collided with another truck. The supervisor testified that he and the customer had previously warned the claimant on several occasions about his speeding. The claimant argued the supervisor's testimony was hearsay and, as such, could not support the Board's findings. This Court disagreed noting that there was nothing on the face of the supervisor's testimony indicating it was based solely on out-of-court

8

declarations of another rather than direct impressions. *Socash*, 451 A.2d at 1052. Although the supervisor testified that he had received a telephone call from his customer regarding the incident, it was equally plausible that the supervisor had made his own observations regarding the claimant's excessive speed. "[T]he process of assuming and inferring has been committed to the Board and not to this Court." *Id.*

In *Socash*, this Court reasoned that, even if the testimony was hearsay, such testimony admitted without objection is sufficient to support a finding if it is corroborated by other competent evidence. *Socash*, 451 A.2d at 1053 (citing *Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366 (Pa. Cmwlth. 1976)). The claimant's testimony regarding the incident provided the necessary corroboration. The claimant testified that he was driving a truck on the road in question at the time of the alleged speeding incident; that he was observed by a supervisory employee; that he engaged in maneuvers intended to accomplish his arrival at a garage first and before another driver; and that the maneuvers created dusty conditions on the road. "These circumstances lend[ed] weight and credibility to the employer's hearsay account of speeding." *Id.* at 1053. Thus, we concluded that the employer's evidence was sufficiently corroborated by the claimant's admissions to support the Board's findings that the claimant was terminated for driving at an unsafe rate of speed. *Id.*

Here, Employer's Director testified that Claimant was discharged for violating its safety policy by speeding. N.T. at 9. Director testified regarding her understanding that Claimant drove at high speeds while transporting a resident to a halfway house based on a GPS report. *Id.* Director further testified that she received an email from compliance personnel informing her that Claimant was traveling for

9

7 minutes at 96 miles per hour within an average speed of 85 miles per hour. *Id.* Director testified that keeping up with the flow of traffic would not be an acceptable reason for driving at that speed. *Id.* According to Director, there would never be a time where driving at that speed would be acceptable. *Id.* at 11.

Although it appears that Director's testimony regarding Claimant's rate of speed was based on out-of-court declarations – the GPS report and email – Claimant did not object to Director's testimony. Claimant's testimony provided the necessary corroboration. Claimant testified that she was driving the work vehicle on the road in question at the time of the alleged speeding incident. N.T. at 13. Claimant did not deny that she was speeding. N.T. at 13. Claimant testified "I know at one point, the speed limit was 75 – I mean 70 miles per hour and 65. I'm not sure after that." N.T. at 14. Claimant acknowledged her speed was up to 76 miles per hour, past the legal limit. N.T. at 13. Claimant defended that she was not pulled over, stopped by the police, or issued a ticket and that no one was hurt by her driving. N.T. at 13. When asked if there was anything else she wanted to share at the hearing, Claimant replied:

> [W]hen driving actually so when you look, you have to look at the speedometer because it doesn't actually seem that you're going as fast as the speedometer says, or if you look at it, you would need to slow down. I do a lot of driving, and I have no speed[ing] tickets whatsoever.

N.T. at 14.

Notably, Claimant did not dispute that she was driving at an average rate of 85 miles per hour or as high as 96 miles an hour for an extended period. N.T. at 14. Claimant testified "I don't know about the GPS. I wasn't aware of the GPS, but if that's what they are recording, I'm not going to battle that because I don't know." *Id.* at 14. Claimant also acknowledged on her initial internet initial claims

10

form that Employer discharged her for driving too fast as reported on the GPS report. *Id.* at 15, 17. Claimant explained that she was "driving with the flow of traffic." *Id.* at 16, 17.

Claimant's testimony, lack of defense, and tacit admissions provide ample corroboration of Director's testimony to support the Board's finding that Claimant was driving "exceedingly fast" for most of her trip while transporting a resident in a work vehicle. F.F. Nos. 3, 4. Claimant's conduct constitutes a violation of Employer's safety policies. Even if Employer had not established a known work rule, Claimant's actions constituted a willful disregard of Employer's interests and of the standards of behavior that Employer has a right to expect of its employees. *See Cadden*, 169 A.2d at 335. In short, Claimant did not show good cause for her conduct.

Accordingly, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Twanda Pierce-Boyce,          :
                                      :

                 Petitioner   :

                                     :

          v.                 : No. 725 C.D. 2021

                                     :

Unemployment Compensation   :
Board of Review,              :

                                   :

             Respondent : 

# **O R D E R**

AND NOW, this 16th day of November, 2022, the order of the Unemployment Compensation Board of Review dated April 19, 2021, is AFFIRMED.

                                 _____
                                  MICHAEL H. WOJCIK, Judge